UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID DELVALLE,

    Plaintiff,

v.                                                   Case No. 8:23-cv-2451-WFJ-AAS

PEDRO HEREDIA,

    Defendant.
_____/

## ORDER

THIS CAUSE comes before the Court on Defendant Pedro Heredia's motion to dismiss *pro se* Plaintiff David Delvalle's civil-rights complaint. (Doc. 26). Mr. Delvalle filed a response in opposition to the motion. (Doc. 28). After careful consideration, the Court denies the motion to dismiss.

**I.**     **Background**

For purposes of this motion, the Court accepts the factual allegations in the complaint as true. Mr. Delvalle is an Orthodox Jewish inmate of the Florida Department of Corrections. (Doc. 1 at 2, 4). He follows the "instruction provided in Leviticus [] and Acts," which requires him to observe a kosher diet. (*Id.* at 3-4). For several years, Mr. Delvalle participated in the Department of Corrections' Religious Diet Program ("RDP"), which allowed him to receive kosher meals. (*Id.* at 4; *see also* Doc. 1-1 at 3-4). In February 2021, he underwent "laparoscopic hernia surgery that unfortunately went wrong." (Doc. 1-1 at 4). As a result, his "stomach was unable to process [] uncooked vegetables," and he

was forced to quit the RDP. (*Id.*) Following a "healing period," Mr. Delvalle "explained his situation" and asked to be put back on the RDP. (Doc. 1 at 4-5). Pedro Heredia, the chaplain at Avon Park Correctional Institution, denied the request in July 2023 "for no reason." (*Id.*) Mr. Heredia allegedly sought to "discourage" Avon Park inmates such as Mr. Delvalle from participating in the RDP by "denying [their requests] for fictitious reasons." (*Id.* at 5). Mr. Delvalle claims he is now "on the vegan diet but [it] does not meet the dietary law of [his] religion." (*Id.*) He also alleges that he is "having mental issues about not following [his] God." (*Id.*)

Mr. Delvalle initially sued Mr. Heredia in his individual and official capacities, alleging violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the First Amendment, the Eighth Amendment, and the Fourteenth Amendment. (*Id.* at 3). As relief, Mr. Delvalle sought "to be placed back on the RDP." (*Id.* at 5). He also requested $15,000 in punitive damages. (*Id.*)

The Court screened Mr. Delvalle's complaint under 28 U.S.C. § 1915A, dismissing without prejudice the claims under RLUIPA, the Eighth Amendment, and the Fourteenth Amendment. (Doc. 22 at 8-9). The court found, however, that Mr. Delvalle stated a plausible free exercise claim against Mr. Heredia in his individual capacity. (*Id.* at 5-6). Although afforded the opportunity, Mr. Delvalle chose not to file an amended complaint. (Doc. 23). Accordingly, this action proceeds on the free exercise claim against Mr. Heredia in his individual capacity. (*Id.*; *see also* Doc. 22 at 8-9).

Mr. Heredia now moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that (1) he is entitled to qualified immunity on the free exercise claim, and (2) Mr. Delvalle "cannot maintain a claim for punitive damages." (Doc. 26).

## II.   Standard of Review

A complaint withstands dismissal under Rule 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id.* All facts are accepted as true and viewed in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Consideration should be limited "to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

## III.   Analysis

### A.   Qualified Immunity

"Qualified immunity offers complete protection for individual public officials performing discretionary functions insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012). To receive qualified immunity, an official must first "establish that he or she acted within the scope of discretionary authority when the allegedly wrongful acts occurred." *Robinson v. Sauls*, 46 F.4th 1332, 1340 (11th Cir. 2022). Once this showing is made, the burden shifts to the

plaintiff to show that (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation. *Id.* at 1340-41. Thus, a motion to dismiss on qualified immunity grounds "will be granted if the complaint fails to allege the violation of a clearly established constitutional right." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).

There is no dispute that Mr. Heredia acted within the scope of his discretionary authority at all relevant times. Therefore, the Court considers whether the complaint sufficiently alleges that Mr. Heredia violated Mr. Delvalle's clearly established constitutional rights.

"To plead a valid free exercise claim, [a plaintiff] must allege that the government has impermissibly burdened one of his sincerely held religious beliefs." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1294 (11th Cir. 2007). "Although prison inmates retain protections afforded by the First Amendment's Free Exercise Clause, prison officials may impose limitations on an inmate's exercise of sincerely held religious beliefs if the limitations are 'reasonably related to legitimate penological interests.'" *Johnson v. Brown*, 581 F. App'x 777, 780 (11th Cir. 2014) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)).

Mr. Delvalle states a plausible free exercise claim. He alleges that his religious beliefs as an Orthodox Jew require him to follow a kosher diet, that Mr. Heredia unreasonably denied his request to receive that diet, and that as a result he has suffered from "mental issues about not following [his] God." (Doc. 1 at 5). Taken as true, these allegations are sufficient to plead that Mr. Heredia "impermissibly burdened one of [Mr. Delvalle's] 'sincerely held religious beliefs.'" *Watts*, 495 F.3d at 1294. The question

becomes whether the denial of Mr. Delvalle's request to be put back on the RDP was "reasonably related to legitimate penological interests." *Johnson*, 581 F. App'x at 780. To make that determination, the Court asks "(1) whether there is a valid, rational connection between the [restriction] and a legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to [Mr. Delvalle]; (3) whether and the extent to which accommodation of the asserted right will have an impact on prison staff, inmates, and the allocation of prison resources generally; and (4) whether the [restriction] represents an exaggerated response to prison concerns." *Hakim v. Hicks*, 223 F.3d 1244, 1247-48 (11th Cir. 2000).

At this early stage of the litigation, the Court "cannot evaluate whether the alleged restrictions on [Mr. Delvalle's] religious practice were reasonable in light of the[se] four . . . factors." *Johnson*, 581 F. App'x at 781; *see also Saleem v. Evans*, 866 F.2d 1313, 1316-17 (11th Cir. 1989) (prisoner's free exercise claim should not be dismissed for failure to state a claim unless the complaint's allegations show the state has a legitimate justification for regulating a prisoner's religious practices or the claim is "so facially idiosyncratic" that no state justification is required). For example, Mr. Heredia argues that the denial of Mr. Delvalle's request for a kosher diet was justified because he "failed to articulate an understanding of kosher process and separation on his RDP application, had a disciplinary history, and failed to participate [in] or attend any of the Orthodox Jewish services and high holy days events offered at [his facility]." (Doc. 26 at 11). But Mr. Delvalle contests these justifications in his complaint. He alleges that, before the denial of his latest RDP application, he had successfully completed the RDP "written exam more than one time,"

and that he "underst[ood] completely the rules of [his] religion." (Doc. 1 at 4). Mr. Delvalle also claims that he chose not to attend services "due to the amount of homosexuality displayed in the congregations," which he believed to be inconsistent with his religious faith.[1] (Doc. 1-1 at 3). More broadly, Mr. Delvalle alleges that Mr. Heredia routinely denied inmates' religious diet requests for "fictitious reasons." (Doc. 1 at 5).

Under these circumstances, "the facts surrounding [the] justification for [the denial of Mr. Delvalle's religious diet request] must be developed to determine whether impermissible infringement has occurred." *Saleem*, 866 F.2d at 1317. In short, Mr. Delvalle states a plausible free exercise claim.

The question thus becomes whether, "at the time of the alleged conduct," Mr. Heredia violated "clearly established law." *Mikko v. City of Atlanta*, 857 F.3d 1136, 1146 (11th Cir. 2017). The answer to that question is yes, assuming, as the Court must, that Mr. Delvalle's allegations are true. "A plaintiff may show that a right was clearly established through: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Prosper v. Martin*, 989 F.3d 1242, 1251 (11th Cir. 2021).

---

[1] In the free exercise context, "it is not for [courts] to say that [a plaintiff's] religious beliefs are mistaken or insubstantial. Instead, [courts'] narrow function . . . is to determine whether the line drawn [between conduct that is and is not permitted under one's religion] reflects an honest conviction." *Davila v. Gladden*, 777 F.3d 1198, 1204 (11th Cir. 2015) (internal quotation marks and citation omitted).

A "broad statement of principle" controls here. *Id.* A reasonable official would have known in July 2023 that the First Amendment requires a prison to "accommodate an inmate's religious dietary restrictions, subject to budgetary and logistical limitations," when the inmate's "belief is 'truly held.'" *Hathcock v. Cohen*, 287 F. App'x 793, 801 (11th Cir. 2008) (quoting *Martinelli v. Dugger*, 817 F.2d 1499, 1504-06, 1508 (11th Cir. 1987), *abrogation on other grounds recognized by Harris v. Chapman*, 97 F.3d 499, 503 (11th Cir. 1996)); *see also Muhammad v. Inch*, No. 3:18-cv-212-HLA-JBT, 2020 WL 13518236, at *8 (M.D. Fla. Mar. 10, 2020) ("[A]t the time of Defendants' alleged conduct, it was clearly established that the First Amendment's Free Exercise Clause prohibits prison officials from forcing an inmate to choose between observing the tenets of his faith and receiving necessary nutrition."). Under the complaint's version of the facts—which the Court must accept as true at this stage—Mr. Heredia unreasonably denied Mr. Delvalle's request for a kosher diet, thus forcing him to consume a "vegan diet [that] does not meet the dietary law of [his] religion." (Doc. 1 at 4-5). "[C]ase law bars [these] alleged actions with sufficient clarity to put any reasonable officer on notice that this conduct" violated the First Amendment. *Sebastian v. Ortiz*, 918 F.3d 1301, 1311 (11th Cir. 2019). Thus, at this early stage of the litigation, Mr. Heredia is not entitled to qualified immunity.

### B.     Punitive Damages

Mr. Heredia argues that Mr. Delvalle "cannot maintain a claim for punitive damages" for two reasons: first, "punitive damages are not recoverable by inmates according to the Prison Litigation Reform Act" ("PLRA"), and second, the complaint "fails to allege sufficient facts to support a claim for punitive damages." (Doc. 26 at 12-16). The

Court declines to dismiss the request for punitive damages at this early stage of the litigation.

"Punitive damages are appropriate in [42 U.S.C.] § 1983 cases 'where a defendant's conduct is motivated by evil intent or involves callous or reckless indifference to federally protected rights.'" *Barnett v. MacArthur*, 715 F. App'x 894, 905 (11th Cir. 2017) (quoting *H.C. v. Jarrard*, 786 F.2d 1080, 1089 (11th Cir. 1986)). The Eleventh Circuit has held that the PLRA "permits claims for punitive damages without a showing of physical injury." *Hoever v. Marks*, 993 F.3d 1353, 1356 (11th Cir. 2021). And several courts in this district have rejected Mr. Heredia's argument that punitive damages qualify as "prospective relief" that cannot be awarded under the PLRA. *See, e.g.*, *Johnson v. Grant*, No. 2:23-cv-577-JES-KCD, 2024 WL 3673600, at *6 (M.D. Fla. Aug. 6, 2024) ("While [the PLRA] erects guardrails on the prospective relief available to inmates challenging prison conditions, it does not outright bar punitive damages."); *Santiago v. Walden*, No. 3:23-cv-741-MMH-JBT, 2024 WL 2895319, at *9 (M.D. Fla. June 10, 2024) ("[T]he Court declines to find that [the PLRA] precludes a request for punitive damages in this § 1983 action."). Therefore, the PLRA does not bar Mr. Delvalle's request for punitive damages.

Likewise, it would be premature to conclude that Mr. Delvalle cannot show that Mr. Heredia's conduct was "motivated by evil intent or involve[d] callous or reckless indifference to federally protected rights." *Barnett*, 715 F. App'x at 905. According to the complaint, Mr. Heredia regularly denied inmates' religious diet requests for "fictitious reasons." (Doc. 1 at 5). Whether this alleged conduct is "factually enough to warrant an award of punitive damages is an inquiry not suited for determination at the motion-to-

dismiss stage." *Brown v. Martinez*, No. 23-20058-CIV, 2023 WL 5036369, at *9 (S.D. Fla. Aug. 8, 2023); *see also Johnson v. Israel*, No. 17-62291-CIV, 2020 WL 1060007, at *10 (S.D. Fla. Mar. 5, 2020) ("[I]t would be premature to strike [plaintiff's] punitive damages claim [under § 1983] so early in the case [*i.e.*, at the pleading stage].").

### IV. Conclusion

Accordingly, it is **ORDERED** that:

1. Mr. Heredia's motion to dismiss (Doc. 26) is **DENIED**.
2. Mr. Heredia must answer the complaint (Doc. 1) within fourteen days of the date of this order.

**DONE** and **ORDERED** in Tampa, Florida, on October 29, 2024.

_____
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**